Peggy J. SAWCZUK–SERGE, Appellant,

v.

**TOWNSHIP OF CHELTENHAM and James Saunders.**

Commonwealth Court of Pennsylvania.

Argued Oct. 19, 1995.

Decided Jan. 12, 1996.

Morton A. Slifkin, for appellant.

Anthony R. DeLuca, for appellee.

Before SMITH and NEWMAN, JJ., and MIRARCHI, Senior Judge.

SMITH, Judge.

Peggy J. Sawczuk–Serge appeals from an order of the Court of Common Pleas of Montgomery County (trial court) that denied her post-trial motions following a verdict for defendants in her action against the Township of Cheltenham (Township) and James Saunders for personal injuries she suffered as a result of a traffic accident involving a Township trash truck. The questions Sawczuk–Serge presents are whether the trial court erred by (1) instructing the jury that trash trucks may travel on the wrong side of the road; (2) ruling that such trucks are exempt from the rules of the road and refusing her proposed points for charge on such rules; (3) adopting the defense version of the facts of the accident in its charge relating to circumstantial evidence; (4) requiring that Sawczuk–Serge read the entire deposition of an absent witness in her case in chief; and (5) making comment upon her weight and rebuking her counsel sharply in the presence of the jury.

On a winter morning when roads were icy, Sawczuk–Serge was driving a Ford Bronco south on Cadwalader Avenue in the Township approaching an intersection where Brookside Road goes off on an angle to the right. Saunders was operating a Township trash truck proceeding north, first along Brookside Road, then crossing over on to Cadwalader Avenue, proceeding up the left side of the road, against traffic. Sawczuk–Serge testified that she was traveling approximately 15 miles per hour; that she first saw the truck at some distance on Brookside, then saw it turn on to Cadwalader; that she stopped her vehicle; and that the truck collided with her vehicle, pushing it back, then continued on before it stopped. Saunders testified that his truck was stopped to pick up trash at the time of the accident, that its four-way flashers were on, that it was along

the curb because no cars were parked at that point and that the Bronco slid into the truck.

## I.

Sawczuk–Serge first contends that the trial court erred in charging the jury concerning the authorization for trash trucks to travel against traffic and to disregard other general rules of the road, which were her primary allegations of negligence, and in refusing her requested points for charge on these matters. Chapter 33 of the Vehicle Code, 75 Pa.C.S. §§ 3301–3368, provides for "Rules of the Road in General." Section 6107, 75 Pa.C.S. § 6107, empowers the Department of Transportation (DOT) to designate certain vehicles or types as authorized vehicles upon a finding that the vehicle is used in the performance of public service or governmental functions and to exempt such vehicles from certain provisions of the Vehicle Code as specified in DOT regulations.

Regulations issued by DOT under Section 6107 are found at 67 Pa.Code §§ 15.1–15.3. Seven types of authorized vehicles are enumerated in 67 Pa.Code § 15.2. Type III expressly includes "[g]arbage trucks and vehicles used for home delivery of United States mail or newspapers." 67 Pa.Code § 15.2(3). Special operating privileges are enumerated in 67 Pa.Code § 15.3. Those for Type III vehicles are found in Section 15.3(b), relating to special privileges with lights (flashing or revolving yellow lights as provided in 75 Pa.C.S. § 4572(b) ), which pertinently provides: "(3) Type III authorized vehicles may stop, stand or park irrespective of official signs or 75 Pa.C.S. §§ 101–9909 (relating to the vehicle code)." Section 15.3(b)(1) permits Type I and Type II vehicles to stop, stand or park on these same

terms and also provides that they may "(ii) Disregard regulations governing direction of movement or turning in specified directions."

Sawczuk–Serge submitted various points for charge relating to specific rules of the road,[1] including proposed charges that findings of violations of those statutes constitute negligence per se, or in the alternative that such violations are evidence of negligence and the defendant bears the burden of offering proof or justification for the violation, and that if Sawczuk–Serge's conduct were based on an assumption that the Township vehicle would behave properly at the intersection, then she could not be found contributorily negligent. The trial court, because of its determination that the trash truck was an "authorized vehicle," refused all such points for charge.

The trial court did charge the jury that the trash truck was an authorized vehicle "having exception to certain things like rules of the road and so forth," N.T. at 371, but that an authorized vehicle must be operated in a reasonable and safe manner. The trial court made express reference to 67 Pa.Code §§ 15.2 and 15.3, then stated: "So this is the entire negligence picture with the specifics of this particular case involved, a municipality and authorized vehicle." N.T. at 381. Finally, on this point, the trial court stated:

And I may say that a garbage truck can proceed with regard to the law on either side of the street subject to proceeding under the authorized vehicle exception and special exception in a safe and reasonable manner.

. . . .

And to put it another way. The trash truck on Cadwalader and/or Brookside in the collection of trash and refuge [sic] on

---

1. Section 3301, 75 Pa.C.S. § 3301, requires in general that vehicles be driven on the right half of all roadways of sufficient width, with certain specific exceptions, and also requires vehicles proceeding at less than the normal speed to be driven in the right lane or as close as possible to the curb or edge of the roadway. Section 3302, 75 Pa.C.S. § 3302, requires vehicles proceeding in opposite directions to pass each other to the right. Section 3306, 75 Pa.C.S. § 3306, provides that no vehicle shall be driven on the left side under certain specific conditions including when approaching within 100 feet of or traversing any

intersection, unless otherwise indicated by official traffic control devices. Section 3322, 75 Pa.C.S. § 3322, requires the driver of a vehicle intending to make a left turn to yield the right-of-way to any vehicle approaching from the opposite direction that is so close as to constitute a hazard. Section 3323, 75 Pa.C.S. § 3323, in general specifies the manner of stopping at stop signs and requires the stopped driver to yield to pedestrians in the crosswalk or to vehicles in the intersection or approaching so closely as to constitute a hazard.

the day in question could operate the truck on either side of the highway, so long as it did so with due care and regard for the rights and safety of any other motorists on either street.

N.T. at 398.

Sawczuk–Serge contends that the trial court erred in concluding and instructing that the exemption for Type I and Type II vehicles from rules of the road relating to direction of movement or turning in specified directions applied to Type III vehicles. According to Section 1502(a)(1)(ii) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1502(a)(1)(ii), the provisions of that Act apply to documents codified in the Pennsylvania Code unless the General Assembly or the agency adopting the document provides otherwise. Section 1921(a) of that Act, 1 Pa.C.S. § 1921(a) provides: "The object of all interpretation and construction of statutes is to ascertain and effectuate the intent of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."

■ As this Court recently reiterated: "It is well settled that where a section of a statute contains a given provision, the omission of that provision from a similar section of the statute is significant to show that a different intention existed." *Krauss v. County of Delaware,* 162 Pa.Cmwlth. 517, 639 A.2d 911, 914 (1994), *appeal denied,* 540 Pa. 608, 655 A.2d 995 (1995) (citing *Commonwealth v. Bigelow,* 484 Pa. 476, 399 A.2d 392 (1979)). DOT's express grant of authority to Type I and Type II vehicles to disregard regulations relating to direction of movement and turning in specified directions, and its omission of such a grant of authority to Type III vehicles in a similar section, falls squarely within this principle. The trial court's concluding otherwise and instructing the jury incorrectly on this crucial point constitutes plain error requiring a new trial.

The Township argues that the provision that Type III vehicles "may stop, stand or park irrespective of official signs *or* 75 Pa. C.S. §§ 1101–9909 (relating to the vehicle code)" (emphasis added), in order to give effect to the disjunctive phrasing, should be interpreted to mean that Type III vehicles are exempt from all provisions of the Vehicle Code. This interpretation ignores the fact that the subject matter to which the exemption applies is "[to] stop, stand or park" only (terms whose meaning includes the opposite of motion), not to movement of vehicles, and that words and phrases are to be construed according to the rules of grammar and according to their common and approved usage. 1 Pa.C.S. § 1903(a).

## II.

Sawczuk–Serge also asserts error in the trial court's ruling on her attempt during her case in chief to read into the record a portion of a deposition of a helper who was working with Saunders at the time of the accident, who was not available to testify at the time of trial because he was incarcerated. The trial court ruled that if she introduced any of it, she would have to introduce it all. Under those terms, she decided not to use it.

■ As Sawczuk–Serge notes, Pa.R.C.P. No. 4020 governs the use of depositions at trial and provides in pertinent part: "[ (a) ](4) If only part of a deposition is offered in evidence by a party, any other party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts." By the plain language of this Rule, a party may introduce a portion of a deposition. The Rule affords protection against confusing and misleading the jury by enabling any other party to require the introduction of any other portion that is relevant to the portion introduced, so as to clarify the context. Further, if any portion is introduced, any other party may introduce any other portions during its case.

The Superior Court has held, where a plaintiff challenged a trial court's permitting a defendant to quote only a portion of a deposition during cross-examination, that it would have been preferable to require quotation of the entire portion, but permission for the plaintiff to do so on rebuttal eliminated any prejudice. *Heffner by Heffner v. Schad,* 330 Pa.Superior Ct. 101, 478 A.2d 1372 (1984). There is no requirement that whenever a party wishes to introduce a portion of

a deposition the party must introduce all of it. As Sawczuk–Serge correctly notes, apart from considerations of economy, such a requirement would negate the effect of the principle of limiting cross-examination to the scope of direct examination, which in turn would violate the principle of affording each party the opportunity to present its side of the case without the introduction of matters unrelated to its case in chief and not touched upon by its evidence. *See Conley v. Mervis,* 324 Pa. 577, 188 A. 350 (1936), *overruled in part on other grounds by DeWaele v. Metropolitan Life Ins. Co.,* 358 Pa. 574, 58 A.2d 34 (1948).

### III.

■ Next Sawczuk–Serge contends that the trial court erred and prejudiced her during its charge to the jury by presenting an illustration of the meaning and proper use of circumstantial evidence that amounted to an acceptance of the defense version of the disputed facts of this case. After presenting an example of inferring that it had rained from hearing thunder and the patter of rain and seeing people in wet rainwear, the trial court continued:

> Now, let me give you another example, and I'm not saying that this is how you should find the facts in this particular case. But taking a hypothetical case, a trash truck being parked and somebody, and for whatever reason, crashes into it in such a way that it bounces off that trash truck, and the weight between that trash truck and the car hitting that trash truck is considerable. And a police officer comes upon the scene and says, when I got there these cars weren't together.

> Now, you use your logic and intuition and knowledge of your laws of physics to know that if there is a movable object that is very, very heavy that's hit by a lighter object in such a way and such an angle that it hits it and can't move that object because it's either not going too fast or the angle is such that it would glance off. That when somebody comes up immediately after the accident those two objects aren't necessarily going to be together, one

is going to slide off or do whatever it has to do.

N.T. at 388–389. In the absence of any other reference to the details of the collision at all during the lengthy charge, Sawczuk–Serge asserts that, despite the trial court's disclaimer, this charge could very easily be perceived by the jury as the court's placing its imprimatur on the defense version of the facts.

In *McEwan v. Yellow Cab Co.,* 182 Pa.Superior Ct. 219, 126 A.2d 816 (1956), in reviewing a trial court's charge stating hypothetical questions while applying the law to the facts of the case, the Superior Court stated that the questions focused the attention of the jury on the version of the evidence most favorable to the plaintiffs without any recognition of directly contradictory testimony favorable to appellant. Such a charge was held to be clearly prejudicial, requiring the granting of a new trial.

The Township and Saunders assert that the trial court's disclaimer before presenting the hypothetical and its informing the jurors at the outset that they were the sole finders of fact precluded the possibility of any prejudice. They also note that trial courts may charge the jury that if they find certain facts are proved or not proved, the result in law will be a certain way.

This Court agrees with Sawczuk–Serge that there was no need for the trial court to take the risk of prejudicing the jury by illustrating the concept of the proper use of circumstantial evidence in general with an example closely culled from one side's version of the disputed facts of this case. The trial court was not engaged in applying the law to hypothetical findings of fact one way or the other. In view of the determination above that a new trial is required, however, the Court need not decide whether this part of the charge constituted reversible error in itself.

### IV.

Finally, Sawczuk–Serge asserts that she was prejudiced by the trial court's sua sponte questioning her about her weight during her testimony, which she argues was related to

no matter at issue, and by the court's standing, harshly raising its voice and pointing at her counsel and threatening to have him removed from the courtroom in handcuffs in front of the jury. The Township and Saunders respond that the trial court's questioning was within its prerogative to clarify and gain additional information for the jury, *see Reimer v. Tien,* 356 Pa.Superior Ct. 192, 514 A.2d 566 (1986), and that the incident complained of took place when counsel raised before the jury in the afternoon issues that had been ruled upon by the trial court in the morning outside the jury's presence, which constituted defiance and disrespect.

Again, because this case is to be retried, this Court need not determine whether these matters in themselves constituted error or reversible error. The Court of course agrees with Sawczuk–Serge's citation of Canon 3.A.(3) of the Code of Judicial Conduct, which provides: "A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control." The Court trusts that the retrial of this matter will be conducted in accordance with this rule. The order of the trial court is reversed, and this case is remanded for a new trial.

### ORDER

AND NOW, this 12th day of January, 1996, the order of the Court of Common Pleas of Montgomery County is reversed, and this case is remanded for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

This decision was reached before the resignation of Judge NEWMAN.